JUDITH ANN STEVENS, as Adm'r of the Estate of Lula O'Dell, Plaintiff-Appellant, v. RAJA M. SADIQ et al., Defendants-Appellees.

Fourth District   No. 4—87—0744

Opinion filed November 10, 1988.—Rehearing denied December 19, 1988.

Warren E. White, of Danville, for appellant.

Richard F. Record, Jr., and Richard C. Hayden, both of Craig & Craig, of Mattoon, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On November 29, 1984, the decedent, Lula O'Dell, brought suit in the circuit court of Vermilion County against defendants Raja M. Sadiq and Brijnandan S. Sodhi for damages resulting from their alleged

negligent medical diagnosis and treatment of her. A two-count amended complaint was later filed. Lula O'Dell died, and her granddaughter, Judith Ann Stevens, who had been appointed administrator of Lula O'Dell's estate, was substituted as plaintiff. After plaintiff had been given leave to dismiss a count charging wilful and wanton misconduct, the case proceeded to trial before a jury on a count charging negligence. At the close of plaintiff's case, the court allowed defendants' motion for a directed verdict. Judgment was entered on that verdict on October 6, 1987.

On appeal, plaintiff maintains the court erred in directing the verdict and rejecting certain evidence offered by plaintiff. We hold that the court properly directed a verdict because of the failure of plaintiff to prove standards of treatment by which the allegedly negligent conduct of defendants could be gauged. We also hold that the evidence excluded by the court, of which plaintiff complains, bore only upon damages. Because of the proper direction of a verdict as to liability, any exclusion of evidence as to damages was not prejudicial. Accordingly, we affirm.

The count upon which the case was tried alleged: (1) defendants were the personal physicians of plaintiff Lula O'Dell; (2) on March 6, 1981, they diagnosed her as having metastatic bone cancer when she did not have bone cancer or any other cancer; (3) they advised her the cancer was extensive and incurable and that her life expectancy was between two months and two years; (4) based on defendants' diagnosis, the family agreed with defendants that no surgery would be performed to locate the primary source of the cancer and only the symptoms of the cancer would be treated; (5) defendants then treated O'Dell with various, increasingly larger dosages of narcotics and controlled substances and radiation treatments; (6) on December 9, 1982, plaintiff learned she did not have bone cancer or any other cancer, but rather had senile osteoporosis, with multiple vertebral compression fractures, and iron deficiency anemia; and (7) she was then discharged from a hospital, and all narcotics and controlled substance treatments were discontinued.

The foregoing count alleged defendants were guilty of negligence because of their (1) failure to timely diagnose and treat the decedent for osteoporosis, compression fractures, and iron deficiency anemia; (2) advice to the decedent, made without adequate knowledge, that she was dying of metastatic bone cancer; (3) treatment of her for bone cancer without adequate knowledge that condition existed; (4) failure to perform proper tests to determine the presence of bone cancer; (5) failure to perform a bone marrow tissue biopsy until Novem-

ber 29, 1982; (6) treatment of the decedent with high doses of narcotics; (7) abrupt termination of decedent's use of narcotics; and (8) failure to treat the decedent for narcotic and drug addiction. The count alleged that, as a result of defendants' negligence, the decedent suffered great mental, physical, and emotional distress, was required to terminate her use of narcotics "cold turkey," and suffered permanent injury and physical pain because of defendants' failure to timely diagnose and treat her osteoporosis, fractures, and anemia.

■■ ■ To establish a *prima facie* case of negligence in medical treatment, a plaintiff must show, by expert testimony (1) proof of the applicable standard of care against which the defendant physician's conduct is measured; (2) a deviation from that standard; and (3) a proximate causal connection between the deviation and the alleged injuries. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Burrow v. Widder* (1977), 52 Ill. App. 3d 1017, 368 N.E.2d 443.) Expert medical testimony is required to establish the standard of care and the defendants' deviation from that standard unless the physicians' negligence is so grossly apparent or the treatment so common as to be within the everyday knowledge of a lay person. (*Purtill*, 111 Ill. 2d at 242, 489 N.E.2d at 872.) Two other exceptions to the requirement of expert testimony, in addition to the "common-knowledge" or "gross-negligence" exceptions, have been recognized by the supreme court in *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253. There, hospital licensing regulations, accreditation standards, and bylaws were admitted as evidence of the standard of care by which a defendant hospital could be judged, and the court allowed expert witnesses to be cross-examined concerning recognized treatises in their field. Neither exception is applicable here.

■ The malpractice alleged here was the alleged misdiagnosis of cancer, the course of treatment following the misdiagnosis, and the failure to treat other conditions which existed at the time of the misdiagnosis. This is not the type of situation that is so grossly apparent or where the common sense of laymen could provide the standard of care. Expert testimony was required to establish the standard of care and, as we will explain, no such testimony was introduced here. Where a plaintiff has failed to produce any evidence on a vital element of the case, directing a verdict for defendants is proper and required. *Alton v. Kitt* (1982), 103 Ill. App. 3d 387, 392, 431 N.E.2d 417, 421.

At trial, decedent's granddaughters, Claresse Elliott and Judith Ann Stevens, testified defendant Sodhi advised them in March 1981

that decedent had cancer in five different areas of the bones, that the cancer had metastasized, and that it was terminal. Both witnesses said Sodhi estimated decedent's life expectancy to be between two months and two years. They also testified that Sodhi wanted to perform exploratory surgery to locate the primary site of the cancer, but the witnesses refused to allow the surgery in light of decedent's age and Sodhi's belief the surgery would not aid in her recovery. Finally, both witnesses testified that Sodhi informed them on December 9, 1982, that decedent did not have cancer.

A number of physicians who had treated or examined decedent testified at trial. Although none of the other physicians indicated a positive diagnosis of metastatic bone disease, one cancer specialist said the X rays could indicate cancer, but she could not tell. She further noted it was "nearly impossible to prove that she did not have a malignancy." Thus, the question of whether the decedent had bone cancer was not established with certainty and to the extent it was an issue, a jury question existed. None of these witnesses, however, were asked to express an opinion as to any prevailing standard of medical practice. In fact, plaintiff admittedly relied entirely upon the testimony of defendant Sodhi to establish the standard of care in this case. It is undisputed that the testimony of a defendant physician may be sufficient to establish the standard of care. *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 259, 381 N.E.2d 279, 284.

Here, defendant Sodhi testified at trial under cross-examination by plaintiff pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102). He denied telling Elliott or Stevens that decedent had cancer or that he had told them she had a limited life expectancy. He testified he told Elliott, who is a licensed practical nurse, that he had examined a bone scan report from a radiologist which "looked like" metastatic bone cancer. He said he told her he could not make a definitive diagnosis of bone cancer without a tissue biopsy of the area. He said, however, she did not want the biopsy performed or the cancer treated because of decedent's age and other medical problems. A biopsy was not performed until November 1982, and Sodhi indicated that the test was "negative" for malignancy. He testified, nevertheless, that based upon a reasonable degree of medical certainty, he still believed decedent had metastatic bone cancer in December 1982.

Sodhi testified that he was familiar with the standard for making a positive diagnosis of metastatic bone cancer and indicated what is involved is a finding of a primary cancer site which has moved to another area of the body. Sodhi indicated his *personal standard* would

be to not tell a patient he had metastatic bone cancer if the physician were not positive of the diagnosis. He also stated if he is faced with a situation wherein he would have to make a diagnosis of a disease he believed he was unqualified to make, his *personal standard* of care would be to call for a consultation. He said the medical standards he practiced under would require him to advise a patient of what tests should be performed and, if for any reason the tests were not performed, his *personal standard* would be to make a diagnosis based on the best evidence available at any given time, for any given patient.

The closest Sodhi came to testifying to an applicable standard occurred during his examination by plaintiff when the following colloquy occurred:

"Q. What is the standard for telling Tiny on March 5, 1981, that Lula O'Dell positively had metastatic bone cancer?

A. The same standard that I just testified to, that whatever information we will give to a patient or the family will be based exactly upon what we have in the record.

Q. All right.

A. That is the medical standard for anything and anywhere in the country."

The only allegation in the amended complaint that either defendant was negligent in the information given to the decedent's family was the allegation that the advice that the decedent was dying of cancer was given without adequate knowledge of the presence of metastatic bone cancer. Any standard established by the testimony did not determine what information was necessary to make a diagnosis of metastatic bone cancer but, rather, set forth that the information given should be based on the patient's record. No allegation was made that either physician made a statement to decedent's family that did not have some basis in the patient's record, and regardless of whether decedent's granddaughters' testimony or that of Sodhi was to be believed, no evidence indicated that Sodhi's advice to the family did not have some basis in the decedent's record.

■ Otherwise, all references by Sodhi to a standard of care were with regard to his personal standards. At no other time did he testify to an objective standard applicable to all physicians with like qualifications confronting a situation such as was involved here. The record was without evidence to establish a standard of care generally practiced in diagnosing disease, as is required to prove a *prima facie* case of negligence. *Alton v. Kitt* (1982), 103 Ill. App. 3d 387, 394, 431 N.E.2d 417, 422.

■ Medicine is an inexact science, and the mere testimony from

other physicians that they would not have made the same diagnosis does not establish a *prima facie* case. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279.) Plaintiff failed to establish an acceptable standard of care for diagnosing and treating metastatic bone disease, and she did not establish that defendants' diagnosis and treatment were a deviation from any acceptable standard.

The evidentiary rulings which plaintiff cites as error concerned the court's refusal to admit (1) an offer of proof as to decedent's addiction to drugs, and (2) excerpts from a deposition of Dr. Sodhi. We need not examine whether any error resulted from these rulings because neither concerned the appropriate standard of care which should have been followed.

For the reasons stated, the decision of the trial court is affirmed.

Affirmed.

McCULLOUGH and SPITZ, JJ., concur.