AMERICAN HOME ASSURANCE COMPANY, Plaintiff, v. WAYNE R. GO-LOMB, Defendant and Counterplaintiff and Third-party Plaintiff-Appellant (Bruce A. Kammeyer, Defendant and Counterdefendant-Appellee; Vicki K. Kammeyer, Third-party Defendant-Appellee).

Fourth District   No. 4—92—0423

Opinion filed December 31, 1992.—Modified on denial of rehearing February 4, 1993.

Lowe, Moore, Susler, McNutt & Wrigley, of Decatur (William A. McNutt and Marshall A. Susler, of counsel), for appellant.

Requa & Alexander, of Springfield (David L. Requa and Ray E. Alexander, of counsel), for appellee Vicki Kammeyer.

Brian T. Otwell, of Morse, Giganti & Appleton, of Springfield, for appellee Bruce Kammeyer.

JUSTICE COOK delivered the opinion of the court:

On December 16, 1991, the circuit court of Sangamon County dismissed defendant and third-party plaintiff Wayne R. Golomb's complaint seeking attorney fees, holding that Illinois law prohibits an attorney from recovering fees under a theory of *quantum meruit* where the parties' original contingent-fee agreement was an illegal contract and against public policy. Golomb appeals, contending (1) a discharged attorney is entitled to recover the reasonable value of his services performed prior to his discharge, and (2) the trial court erred in holding the contingent-fee agreements barred his *quantum meruit* claim for fees. We affirm.

On February 6, 1987, third-party defendant Vicki Kammeyer (Vicki) signed an "AGREEMENT TO EMPLOY ATTORNEY" wherein she requested Golomb to represent her "in the prosecution of a claim against Roy Hankins, M.D.[,] arising out of an occurrence on or about 1983-1986." The agreement required Vicki to pay Golomb a retainer of $500, 40% of any amount recovered, and his expenses plus interest of 2% per month calculated from the date incurred. The agreement also provided Golomb would receive 50% of any amount recovered if a second trial or appeal was required.

On or about September 9, 1987, Vicki's husband, defendant Bruce Kammeyer (Bruce), signed an "AGREEMENT TO EMPLOY ATTORNEY" wherein he requested Golomb to represent him "in the prosecution of a claim against Roy Hankins, M.D.[,] and any other persons or entities, arising out of an occurrence on or about 1983-1986." This agreement contained three payment options. The first option provided the client would pay Golomb on an hourly basis. The second option was a contingent-fee agreement with Golomb to receive one-third of any amount up to $150,000, 25% of the next $850,000, and 20% of any amount above $1 million; this option required the client to provide his own qualified medical expert. The third option was also a contingent-fee agreement, but with Golomb to receive 40%, which included Golomb's services in finding and retaining a qualified medical expert. This third option contained an indemnification clause which required the client to "waive any and all rights under the fee structure set by law for attorney's fees in malpractice cases, and agree to hold Wayne R. Golomb harmless for any loss or diminution of fee he may receive as a result of the aforesaid law." All contingent-fee options required the client to pay a contingent fee of 50% if a second trial or appeal was necessary and pay Golomb's expenses; the first and second option also required the client to pay interest on the expenses of 2% per

month calculated from the date incurred. Bruce chose the third payment option, the 40% contingent fee with Golomb providing the expert.

On September 25, 1987, Vicki signed a second contingent-fee agreement which contained three payment options and was in a form similar to the one signed by Bruce. Vicki chose the third option, the 40% contingent fee with Golomb providing the expert. At this point we note that different rules apply to fee contracts entered into before the attorney-client relation has begun and those entered into after it has begun. When an attorney enters into a transaction with a client, after the attorney has been retained, it is presumed that the attorney exercised undue influence. (*In re Marriage of Pagano* (1992), 154 Ill. 2d 174, 185.) We need not address that presumption, however, in order to decide this case.

After Golomb was retained to represent Vicki in the case, he states he "conducted an extensive investigation of the facts of the case"; "prepared numerous pleadings and responses"; "appeared in court on numerous times"; "negotiated settlement"; and "prepared the case to the point that it was ready to go to trial." While Golomb was representing the Kammeyers, he received a settlement offer of $150,000, memorialized in a letter dated April 10, 1990. Thereafter Bruce and Vicki discharged Golomb as their attorney and reached a settlement agreement with plaintiff American Home Assurance Company (Dr. Hankins' insurance carrier) under which Bruce would receive $15,000 and Vicki would receive $100,000. On July 24, 1991, plaintiff filed a "COMPLAINT IN CHANCERY (INTERPLEADER)," seeking to interplead the sum of $15,000 which it had agreed to pay Bruce, but which was subject to an attorney's lien filed by Golomb. Bruce denied Golomb was entitled to any of the proceeds.

Golomb filed an answer, counterclaim, and third-party complaint. Golomb claimed to be entitled to a reasonable fee for services rendered to Bruce and Vicki under a theory of *quantum meruit*. Golomb's counterclaim against Bruce stated that Golomb was entitled to $42,817.50 in attorney fees, and costs and expenses totalling $6,113.43, plus interest of 2% per month calculated from July 2, 1991. Golomb also filed a third-party complaint against Vicki seeking $17,003.50 in attorney fees and $2,052.61 in costs and expenses. Golomb claimed to be entitled to the entire sum interpleaded and sought judgment against Bruce and Vicki for any deficiency.

Bruce filed a motion to dismiss the counterclaim pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—619). Vicki filed a similar motion the same day. The

court granted the motions to dismiss, stating the "Court finds the contingent fee agreement to be an illegal contract and against public policy and therefor[e] void. Illinois law prohibits recovery of attorney's fees pursuant to contract or on a *quantum meruit* basis where the contingent fee contract giving rise to the parties' relationship is illegal." Golomb filed a motion for reconsideration, and on March 16, 1992, the trial court granted a portion of Golomb's motion to allow him to recover costs and expenses. The remaining portions of the motion were denied.

In Illinois, a client has the right to discharge his attorney at any time with or without cause. Ordinarily, an attorney is entitled to recover an amount equal to the reasonable value of his services in *quantum meruit* if he is discharged and the contingent-fee contract under which he was employed is broken. (See *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 229-30, 399 N.E.2d 969, 974-75.) Bruce and Vicki cite *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 501 N.E.2d 901, and *Licciardi v. Collins* (1989), 180 Ill. App. 3d 1051, 536 N.E.2d 840, for the further proposition that an attorney's recovery in *quantum meruit* may be barred if an attorney has engaged in illegal conduct. In *Leoris* a fee-splitting agreement between attorneys violated a public policy, later codified in Rule 2—107 of the disciplinary rules of the Code of Professional Responsibility (87 Ill. 2d R. 2—107), that a division of fees be based upon the sharing of services and responsibilities. Not only was the agreement unenforceable, the attorney was also denied recovery in *quantum meruit*.

> "Where enforcement of an illegal contract is sought, the courts will aid neither party but will leave them where they have placed themselves since the parties are *pari delicto* and can recover nothing under the contract. [Citation.] Therefore, we find that plaintiff is foreclosed from recovery on the theory of *quantum meruit* because unprofessional conduct, as exhibited here, clearly violated stated canons of ethics that bar recovery. [Citation.] Accordingly, we find that plaintiff's conduct, which clearly violated established canons of ethics, warrants forfeiture of his attorney fees." (*Leoris*, 150 Ill. App. 3d at 354, 501 N.E.2d at 904.)

*Licciardi* involved a situation where a lawyer's actions were viewed as tantamount to procuring a property settlement in a dissolution proceeding, and thus within the bar of Rule 2—106(c)(4) (107 Ill. 2d R. 2—106(c)(4)), prohibiting contingent-fee agreements. (*Licciardi*, 180 Ill. App. 3d at 1061, 501 N.E.2d at 844-45.) *Licciardi* rejected the argument that the *Leoris* bar on recovery in *quantum meruit* applied

only to fee-splitting cases, relying on the *Leoris* language that "unprofessional conduct," and "conduct which clearly violated established canons of ethics," warranted forfeiture of attorney fees.

In *Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 530, 526 N.E.2d 1115, 1122-23, this court held that the reduction of an attorney's fees imposed solely as a sanction for unprofessional conduct on his part would constitute an impermissible infringement on the exclusive power of the supreme court, acting through the Attorney Registration and Disciplinary Commission, to adjudicate attorney disciplinary matters. In that case, however, the attorney was not alleged to have violated some provision on contingent fees, or other fees, but to have generally acted unprofessionally: by incompetent representation, by refusing to allow the client input in a brief that was filed, by failing to advise the client an opinion had been filed, by misinforming the client in an attempt to dissuade appeal, and by violation of the attorney-client privilege. (*Reed Yates*, 172 Ill. App. 3d at 524, 526 N.E.2d at 1118.) Despite *Reed Yates*, conduct violating public policy which would render a contract for professional services unenforceable is not placed beyond the reach of contract law because it violates professional standards as well. *Maksym v. Loesch* (7th Cir. 1991), 937 F.2d 1237, 1244; *Cross v. American Country Insurance Co.* (7th Cir. 1989), 875 F.2d 625, 628-29.

■ Still, not every violation of every rule of professional responsibility can be assumed to be the kind of grave, injurious, and nontechnical violation of a strongly established public policy that justifies the voiding of a contract. (*Maksym*, 937 F.2d at 1244; *Cross*, 875 F.2d at 628 (attorney had not signed agreement, and agreement did not deal with expenses, both specifically required by Rule 2—106(c)(2), but the violations were viewed as only "minor technical deficiencies," and the agreement was held enforceable); *cf. Kaplan v. Pavalon & Gifford* (N.D. Ill. 1992), 806 F. Supp. 192.) The supreme court has recently held, reviewing a number of cases, that a lawyer's breach of fiduciary duty does not always bar recovery of fees:

> "As these and many other cases demonstrate, when one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court. While the breach may be so egregious as to require the forfeiture of compensation by the fiduciary as a matter of public policy [citation], such will not always be the case." *Pagano* (1992), 154 Ill. 2d at 190.

■ In the present case the directive violated by the attorney is not found in a rule of professional conduct, but in a statute. In 1985,

the Illinois General Assembly revised the procedures related to medical malpractice actions, adding a provision setting out the maximum contingent fees an attorney may recover in a medical malpractice action (Pub. Act 84—7, §1, eff. Aug. 15, 1985 (1985 Ill. Laws 211, 221)):

> "Contingent fees for attorneys in medical malpractice actions. (a) In all medical malpractice actions the total contingent fee for plaintiff's attorney or attorneys shall not exceed the following amounts:
>
> 33⅓% of the first $150,000 of the sum recovered;
>
> 25% of the next $850,000 of the sum recovered; and
>
> 20% of any amount recovered over $1,000,000 of the sum recovered.
>
> \*\*\*
>
> (c) The court may review contingent fee agreements for fairness. In special circumstances, where an attorney performs extraordinary services involving more than usual participation in time and effort the attorney may apply to the court for approval of additional compensation." Ill. Rev. Stat. 1985, ch. 110, pars. 2—1114(a), (c).

■ Even accepting the argument that enforcement of a contingent-fee agreement is not prohibited where there is only a "minor technical" violation of sections 2—1114(a) and (c), we cannot describe the violation here in those terms. First, we note the unusual form in which the contracts were executed. Golomb not only knowingly attempted to secure a fee in excess of the statutory maximum, but attempted to justify his fee to the client by suggesting that he was performing an extra service by securing and retaining a medical expert, usually a prerequisite in any medical malpractice case. (See, *e.g.*, *Stevens v. Sadiq* (1988), 176 Ill. App. 3d 333, 336, 530 N.E.2d 1159, 1160-61.) Further, the contracts contained an indemnification clause where the client would hold "Golomb harmless for any loss or diminution of fee he may receive as a result of the aforesaid law." While an attorney may wish to insert a clause in the original contract which reserves his right to seek additional compensation (see Ill. Rev. Stat. 1991, ch. 110, par. 2—1114(c)), an attorney who anticipates the possibility of extraordinary services is not required to execute a contract with rates in excess of those allowed in section 2—1114; the contract need only reserve the right to apply to the court for approval of additional compensation. Golomb's actions in negotiating these fee agreements cannot be described as innocent, unintentional, or involving minor technical deficiencies. Golomb's transparent attempt to charge a

fee in excess of the statutory cap, and the contractual provisions by which he attempted to secure it, rendered the contract illegal from its inception.

Golomb maintains that upon his termination, the attorney-client contract ceased to exist and should not bar his recovery here, citing *In re Estate of Callahan* (1991), 144 Ill. 2d 32, 578 N.E.2d 985. Golomb's reliance on *Callahan* is misplaced. In *Callahan,* the narrow issue decided was whether an attorney, after discharge, could recover in *quantum meruit* before the case had been tried or settled, which would not have been possible under the contingent-fee contract. The supreme court held that the contingent-fee contract had ceased to exist when the client terminated the relationship and the attorney could recover in *quantum meruit* regardless of whether the client had made a recovery. However, the contract in *Callahan* was not an illegal one and we do not read the narrow language of *Callahan* to imply a sweeping rule that a contingent-fee contract is irrelevant in all circumstances after the client has discharged the attorney.

The trial court acted well within its discretion in denying any attorney fees in this case. The judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH and GREEN, JJ., concur.