SECOND DIVISION
NOVEMBER 10, 2009

1-08-1133

| | | |
|---|---|---|
| PREMIER NETWORKS, INC., an Illinois Corporation, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 04 CH 2575 |
| STADHEIM AND GREAR, LTD., an Illinois Limited | ) | |
| Liability Company, JOSEPH A. GREAR, and GEORGE | ) | |
| C. SUMMERFIELD, | ) | Honorable |
| | ) | Kathy M. Flanagan, |
| Defendants-Appellees and Cross-Appellants. | ) | Judge Presiding, |

PRESIDING JUSTICE CUNNINGHAM delivered the opinion of the court:

Premier Networks, Inc. (Premier), sued the law firm of Stadheim & Grear, Ltd., and two of its attorneys, Joseph A. Grear and George C. Summerfield (collectively referred to herein as Stadheim) for legal malpractice and a declaratory judgment seeking to void Premier's contingent fee agreement with Stadheim. The circuit court of Cook County dismissed count I of the complaint, which alleged legal malpractice by Stadheim, finding that exclusive jurisdiction rested in the federal court because substantive matters of patent law would necessarily have to be determined. The circuit court also granted judgment on the pleadings for Stadheim on count II, which challenged the contingent fee agreement between Stadheim and Premier. Premier alleged that the agreement's provision of attorney fees of 40% of Premier's earnings from certain patents was unreasonably high, therefore voiding that agreement *ab initio*. Premier also alleged in count II that the agreement placed Stadheim in a business relationship with Premier. Both aspects of the contingent fee agreement were alleged to have violated the Illinois Rules of Professional Conduct for attorneys. 134 Ill. 2d R. 1.1 *et seq.* Premier appeals both orders. Stadheim has cross-appealed from the circuit court's denial of

its motion to dismiss count I with prejudice, based on Stadheim's assertion that count I failed to state a cause of action. We affirm the judgment of the circuit court of Cook County.

BACKGROUND

Premier owns patent number 4,303,805 (the 805 patent) on a system which amplifies telephone signals transmitted by individual telephones to telephone companies' central offices. Believing that Lucent Technologies (Lucent), which is now known as Alcatel-Lucent, was infringing on this patent, Premier engaged Stadheim to bring a federal lawsuit against Lucent. Stadheim brought the lawsuit, but the federal district court granted summary judgment for Lucent, finding no patent infringement. Premier Networks, Inc. v. Lucent Technologies Inc., No. 99 C 3787 (N.D. Ill. May 29, 2003) (opinion not reported in Federal Supplement, sec. 67, U.S.P.Q.2d 1848). The judgment was affirmed on appeal in an unpublished opinion. Premier Networks, Inc. v. Lucent Technologies Inc., No. 03-1494 (Fed. Cir. March 22, 2004) 92 Fed. Appx 793. The court of appeals noted that Premier's system coupled the receiver and the transmitter of the telephone to the telephone lines. It then found that Premier had failed to rebut evidence presented by Lucent that Lucent's system did not couple the receiver and transmitter, but instead used independent connections for those items. On this ground, the federal appeals court affirmed the district court's order granting summary judgment for Lucent, finding no infringement of Premier's 805 patent.

When it hired Stadheim, Premier entered into a written contingency fee agreement with Stadheim. The pertinent portions of that agreement were as follows:

"[Stadheim has] agreed to undertake representation of

[Premier] as [Premier's] attorney on a contingent fee basis in the

licensing and enforcement of [seven specified patents including the 805 patent] and any patents that have now issued, or in the future issue, as a divisional, continuation, continuation-in-part *** or reissue of [four of the above-listed patents, including the 805 patent (the Subject Patents)].

* * *

Stadheim will act as counsel to [Premier] in the conduct and formulation of licensing strategy, in the conduct of license negotiations, in reexamination, reissue or any related prosecution proceedings and in such litigation as may be reasonable and necessary to protect and preserve [Premier's] rights under the [S]ubject [P]atents. *** [Premier] alone will have authority to make final commitments for and execute license agreements and other documents granting rights under the [S]ubject [P]atents. All decisions to file infringement suits shall be made by [Premier].

* * *

Premier will be billed for all reasonable and necessary expenses incurred on [Premier's] behalf in connection with this representation.

* * *

2. *** [In addition, Stadheim] shall receive as compensation for [its] services forty percent (40%) of any and all income received

3

> *whether as a result of licenses, settlements, judgments (including*
>
> *awards of interest, increased damages and attorney fees) or*
>
> otherwise, in respect of the Subject Patents, through the full life of the
>
> patents."

In essence, Stadheim and Premier agreed that Stadheim would provide all legal representation concerning certain specified patents, including the 805 patent, in return for 40% of all future income derived from those patents, plus costs. It was clearly agreed that Premier would make the final determination on license agreements and the filing of any infringement lawsuits concerning the Subject Patents. The agreement also gave both parties the right to terminate the agreement, with specifications for the determination of any *quantum meruit* payments to be made to Stadheim for unfinished work.

In its legal malpractice complaint filed in the circuit court of Cook County after the dismissal of its federal complaint against Lucent, Premier alleged in count I of its complaint, that Stadheim had failed to utilize scientific evidence given to Stadheim by Premier to be used in the federal case against Lucent. Premier asserted that this scientific evidence would have rebutted Lucent's claim by establishing that the Lucent system also had a substantial amount of coupling of a telephone's transmitter and receiver to telephone lines. Premier alleged that Stadheim's failure to use the scientific evidence was legal malpractice. Premier also asserted that but for this alleged legal malpractice, it would have prevailed in the federal lawsuit. As we have noted, the circuit court of Cook County granted Stadheim's motions, dismissing Premier's legal malpractice claim as to count I for lack of jurisdiction and granting judgment on the pleadings to Stadheim as to count II, which

4

alleged that the contingent fee agreement between the parties was void. The circuit court had previously denied Stadheim's motion to dismiss count I with prejudice. That motion was premised on Stadheim's claim that Premier had failed to sufficiently plead the elements of a legal malpractice claim. Thus, although the circuit court did ultimately dismiss count I of Premier's complaint, the grounds for dismissal were different from the grounds asserted by Stadheim in its motion to dismiss. Premier now appeals from the circuit court's orders dismissing its lawsuit and Stadheim has filed a cross-appeal challenging the circuit court's refusal to dismiss count I with prejudice. We affirm.

ANALYSIS

We first address Premier's challenge to the contingent fee agreement which it entered into with Stadheim, as asserted in count II of its complaint. Our review of the circuit court's dismissal of count II of the complaint is *de novo*. Young v. Bryco Arms, 213 Ill. 2d 433, 440, 821 N.E.2d 1078, 1083 (2004). In our review, we must accept Premier's well-pleaded facts and the reasonable inferences to be drawn from those facts, and we must evaluate Premier's allegations in the light most favorable to Premier. Young, 213 Ill. 2d at 441, 821 N.E.2d at 1083. But we must also bear in mind that Illinois is a fact-pleading state, so that a complaint will not survive a motion to dismiss if the complaint consists of only conclusions of law and conclusory factual allegations unsupported by specific factual statements. Capitol Indemnity Corp. v. Steward Smith Intermediaries, Inc., 229 Ill. App. 3d 119, 123, 593 N.E.2d 872, 875 (1992). If we find that Premier has only utilized conclusory language in its complaint, then the complaint must fail and we will affirm the trial court's order of dismissal. Village of South Elgin v. Waste Management of Illinois, Inc., 348 Ill. App. 3d 929, 930-31, 810 N.E.2d 658, 662 (2004).

5

Here, Premier alleges in the most conclusory of terms that its contingent fee agreement with Stadheim violates Rule 1.5(a) of the Illinois Rules of Professional Conduct (Conduct Rules), which requires that lawyers' fees shall be "reasonable." 134 Ill. 2d R. 1.5(a). Premier also alleges that the agreement violates Rule 1.8 of the Conduct Rules, which concerns conflicts of interest between clients and lawyers. Although Premier's complaint fails to specify which portion of that rule was being violated, it can be inferred from the language of the complaint that Premier is referring to Rule 1.8(a), which states:

> "Unless a client has consented after disclosure, a lawyer shall not enter into a business transaction with the client if:
>
> (1) the lawyer knows or reasonably should know that the lawyer and the client have or may have conflicting interests therein; or
>
> (2) the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client." 134 Ill. 2d R. 1.8(a).

There is no allegation by Premier in its complaint, to which the circuit court permitted four amendments, which establishes or even suggests that Stadheim "entered into a business transaction" with Premier. The record establishes that the parties *agreed to a contingent fee arrangement* in which Stadheim would receive a percentage of income realized by Premier from certain patents for which Stadheim was to provide legal advice and representation to Premier. Moreover, even if we were to construe the contingent fee agreement in the manner suggested by Premier, there is no

6

allegation that Premier did not knowingly consent to this arrangement. Furthermore, the terms of the contingent fee agreement set out that Stadheim would act "as may be reasonable and necessary to protect and preserve [Premier's] rights under the [S]ubject [P]atents." It is clear from this provision of the parties' agreement that Premier expected Stadheim to "exercise [Stadheim's] professional judgment" to protect Premier. This exercise of professional judgment would fit the exception provided in Rule 1.8(a)(2) for instances where a client expects a lawyer to exercise his professional judgment to protect the client's interests.

Thus, we believe Premier has misapprehended which rule applies to the argument that it advances. It is clearly Rule 1.8(i)(2), which applies to the agreement under the argument advanced by Premier. That section provides:

> "(i) A lawyer shall not acquire a proprietary interest in the cause of action or the subject matter of litigation which is being conducted for a client *except by:*
>
> \*\*\*
>
> *(2) contracting with a client for a reasonable contingent fee in a civil case.*" (Emphasis added.) 134 Ill. 2d R. 1.8(i)(2).

This portion of the rule makes clear that to the extent the contingent fee agreement could be construed as granting Stadheim a proprietary interest in the patents they were to defend, such an agreement is permissible as part of a contingent fee agreement provided the fee is reasonable.

This brings us to Premier's claim that the 40% fee was unreasonable. A contingent fee

agreement of 40% is not automatically invalid or unreasonable, absent a statutory prohibition. Home Federal Savings & Loan Ass'n of Centralia v. Cook, 170 Ill. App. 3d 720, 724, 525 N.E.2d 151, 154 (1988). Premier has alleged no facts to support its assertion that the 40% contingent fee to which it agreed was unreasonable, nor has it alleged that the specific percentage is in violation of any statute. Indeed, even when it is established that a fee agreement violates rules of professional conduct, that fact alone does not invalidate the agreement. American Home Assurance Co. v. Golomb, 239 Ill. App. 3d 37, 42, 606 N.E.2d 793, 796-97 (1992). In this instance we have found no such violation. The facts of the underlying case suggest the need for highly skilled legal representation in a very technically narrow area of patent practice. Premier obviously had confidence in Stadheim's ability to represent its interests in this narrow, technical area of patent law.

We also note that the language of the agreement provided that Premier was free to repudiate the agreement at any time, subjecting itself only to a court determination of reasonable compensation in *quantum meruit* for work which Stadheim had already performed. In re Estate of Callahan, 144 Ill. 2d 32, 39-40, 578 N.E.2d 985, 988 (1991); Anderson v. Anchor Organization for Health Maintenance, 274 Ill. App. 3d 1001, 1007-08, 654 N.E.2d 675, 681-82 (1995); American Home Assurance, 239 Ill. App. 3d at 41, 606 N.E.2d at 796. This provided another basis for considering and making a determination, based on the pleadings, whether the fee agreement was unreasonable. Clearly, the circuit court had the benefit of these facts and considerations in its analysis. Accordingly, we hold that the circuit court did not err in dismissing count II of Premier's complaint.

We next determine whether the circuit court properly dismissed count I of the complaint for lack of jurisdiction, based upon the court's finding that jurisdiction was vested solely in the federal

court. The instant lawsuit was brought by Premier in the circuit court of Cook County against Stadheim, alleging in count I that Stadheim had committed legal malpractice because Premier's federal lawsuit against Lucent for patent infringement was dismissed. It is well established that a legal malpractice lawsuit presents a "case within a case" wherein the plaintiff must establish that but for the defendant law firm's legal malpractice, the underlying case would have been won for the plaintiff. Claire Associates v. Pontikes, 151 Ill. App. 3d 116, 122-23, 502 N.E.2d 1186, 1190 (1986). To resolve this issue, the circuit court would be required to determine arcane questions of patent law. Thus, the issue before us, apparently novel to the appellate court of this state and most other states, is whether a legal malpractice action, ordinarily cognizable in state court, must yield to federal jurisdiction when the malpractice action necessarily requires a substantial resolution of patent law issues in order to resolve the underlying case upon which the legal malpractice is based.

We begin our analysis with the principle that the federal court has exclusive jurisdiction over patent cases, pursuant to the United States Constitution (U.S. Const., art. 1, §8, cl. 8) and federal statute (28 U.S.C. §1338(a) (2006)). This exclusive jurisdiction also extends to cases in which the plaintiff's right to relief necessarily depends on the resolution of a substantial question of patent law. Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 808-09, 100 L. Ed 2d 811, 824-25, 108 S. Ct. 2166, 2173-74 (1988). We have found cases in three other state court jurisdictions which have determined the issue before us. One case, relied upon by Premier, is New Tek Manufacturing, Inc. v. Beehner, 270 Neb. 264, 702 N.W.2d 336 (2005) (New Tek I) (holding reaffirmed after remand in New Tek Manufacturing, Inc. v. Beehner, 275 Neb. 951, 751 N.W.2d 135 (2008) (New Tek II)).

In New Tek I, the plaintiff alleged that the defendant law firm had committed legal malpractice by allowing a patent to lapse, which resulted in the loss of certain patent protections possessed by the plaintiff, even after the defendant law firm ultimately renewed the patent. New Tek I, 270 Neb. at 268, 702 N.W.2d at 344. In the legal malpractice action brought by the plaintiff against the defendant law firm in state court, the trial court determined that it was not required to yield to federal jurisdiction despite 28 U.S.C. §1338's grant of exclusive jurisdiction over patent matters to federal court, because the patent issue involved was only "incidental" to the legal malpractice action. New Tek I, 270 Neb. at 268, 702 N.W.2d at 344. We note that, later on appeal to the Nebraska Supreme Court, the court in its opinion found that it necessarily had to discuss and analyze in detail the nuances of patent law in order to decide whether legal malpractice had been committed. In other words, the Nebraska Supreme Court's analysis clearly went to the very heart of patent law and therefore was, as the defendant in that case argued, clearly within the scope of 28 U.S.C. §1338's jurisdiction. Therefore, we are not persuaded by the logic of New Tek I and decline to adopt its holding.

A California appellate court case, Lockwood v. Shepard, Mullin, Richter & Hampton, 173 Cal. App. 4th 675, 93 Cal. Rptr. 3d 220 (2009), and an Ohio appellate court case, TattleTale Portable Alarm Systems, Inc. v. Calfee, Halter & Griswold, LLP, ___ Ohio App. 3d ___, 2009 Ohio 1379, ___ N.E.3d ___, are both instructive in our analysis of the issue before us. In Lockwood the plaintiff was an inventor who sued a law firm alleging legal malpractice in the law firm's defense of a lawsuit brought against the plaintiff in which another party sought to obtain a reexamination of the plaintiff's patents. On appeal, the Lockwood court noted the exclusive jurisdiction of the federal court over patent matters, and also determined that resolution of the plaintiff-inventor's legal malpractice claim

10

against the law firm which had represented him in the underlying case would necessarily require the trial court to determine substantial questions of patent law. For this reason, the appellate court in Lockwood determined that exclusive jurisdiction over the legal malpractice action brought by the plaintiff against the law firm rested in the federal court. It therefore vacated a judgment entered in the trial court for the defendant law firm and remanded the case to the trial court for dismissal of the lawsuit for lack of subject matter jurisdiction. Lockwood, 173 Cal. App. 4th at 686, 93 Cal. Rptr. 3d at 228. In so ruling, the Lockwood court relied upon two federal cases which determined that the federal court had jurisdiction over legal malpractice actions which necessarily involved the determination of substantial questions of patent law, Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, LLP, 504 F.3d 1262, 1269 (Fed. Cir. 2007) and Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281, 1285 (Fed. Cir. 2007). See also Tomar Electronics, Inc. v. Watkins III, No. 2:2009cv00170 (D. Ariz. July 23, 2009) (legal malpractice case filed in Arizona state court was properly removed to federal court where the legal malpractice case necessarily required the resolution of substantial questions of patent law).

In the second case that is helpful in our analysis, the Ohio appellate court in TattleTale found that the state courts of Ohio had no jurisdiction over a legal malpractice case which necessarily required determination of a substantial question of patent law involving an alarm system requiring no wires or telephone lines. TattleTale, ___ Ohio App. 3d ___, 2009 Ohio 1379, ___ N.E.2d ___. Unlike New Tek I, these cases are in accord with the holding of the United States Supreme Court in Christianson, 486 U.S. at 808-09, 100 L. Ed. 2d at 824-25, 108 S. Ct. 2173-74, which makes it clear that because the federal court has exclusive jurisdiction over patent cases, this jurisdiction also

1-08-1133

extends to cases in which the plaintiff's right to relief necessarily depends upon the resolution of a substantial question of patent law.

Accordingly, we are persuaded that in the case before us, in which the issues of legal malpractice are necessarily inextricably bound to determinations of substantive issues of patent law, jurisdiction rests exclusively with the federal court. Accordingly, the circuit court properly dismissed count I of Premier's complaint, which alleged legal malpractice, for lack of subject matter jurisdiction. As noted, we have also affirmed the circuit court's dismissal of count II of Premier's complaint. In light of our resolution of the issues discussed, in particular our holding that the circuit court lacked jurisdiction with respect to count I of Premier's complaint, we do not reach the issue raised in Stadheim's cross-appeal regarding the trial court's failure to dismiss count I of Premier's complaint with prejudice for failure to state a cause of action..

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN and KARNEZIS, JJ., concur.