ROSE MARIE ANDERSON *et al.*, Plaintiffs-Appellants, v. ANCHOR ORGA-NIZATION FOR HEALTH MAINTENANCE *et al.*, Defendants (Joan Schiller Travis, Appellee).—JOAN SCHILLER TRAVIS, Plaintiff-Appellant, v. KEN-NETH C. CHESSICK, Defendant-Appellee.

First District (4th Division)   Nos. 1—94—0623, 1—94—1557 cons.

Opinion filed August 24, 1995.

Kenneth C. Chessick, M.D., of Schaumburg (John W. Fisk, of counsel), for appellants Rose Marie Anderson and Frank Anderson and appellee Kenneth C. Chessick.

Robert Sklodowski, of Chicago, and Kevin E. Bry, of Oak Park, for Joan Schiller Travis.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

In this opinion, we address appeals from orders of the circuit court entered in two distinct but related actions. Each appeal was separately briefed, but because they involve the same operative set of facts, we have elected to consolidate the appeals.

Rose Marie Anderson and Frank Anderson (plaintiffs) engaged Joan Schiller Travis, an attorney who had previously represented their son, to represent them in a medical malpractice action and signed contingent fee retainer agreements with Travis on February 22, 1986, and April 12, 1986, respectively. Both retainer agreements provided that Travis was entitled to a fee equal to 40% of the gross amount recovered by suit or settlement plus all expenses incurred. At the time the plaintiffs signed the contingent fee agreements, section 2—1114 of the Code of Civil Procedure (Code) limited contingent attorney fees in medical malpractice actions to an amount not to exceed $33^{1}/_{3}\%$ of the first $150,000 recovered, 25% of the next $850,000, and 20% of any amount recovered in excess of $1 million (Ill. Rev. Stat. 1987, ch. 110, par. 2—1114).

After the execution of the retainer agreement with Rose Marie Anderson, but before the execution of the agreement with Frank Anderson, Travis contacted Kenneth C. Chessick, who is licensed both as an attorney and a physician, and retained him to act as her co-counsel. Travis and Chessick orally agreed to equally divide the fees and costs. Although Travis advised the plaintiffs that Chessick had been retained and that there would be no additional charge for

his services, the plaintiffs never consented in writing to the employment of Chessick as required by the then applicable Rule 2—107(a)(1) of the Illinois Code of Professional Responsibility (107 Ill. 2d R. 2—107(a)(1)).

On January 27, 1987, a medical malpractice action was filed on behalf of the plaintiffs in the circuit court of Cook County as case No. 86 L 12564. Both Chessick and Travis rendered legal services and advanced costs in furtherance of the plaintiffs' action.

On February 19, 1992, the plaintiffs forwarded separate but identical letters to Travis discharging her as their attorney and stating that Chessick would act as their attorney. Coincidentally, on the same day, the plaintiffs signed a contingent fee agreement retaining Chessick to represent them.

After being discharged, Travis forwarded notices to all of the defendants in case No. 86 L 12564 claiming an attorney's lien in the amount of 40% of all sums that the plaintiffs might recover by settlement or judgment. Additionally, on June 19, 1992, Travis filed a multicount action against the plaintiffs and Chessick in the circuit court of Cook County as case No. 92 CH 5917.

On February 18, 1993, the plaintiffs agreed to a settlement having a value $1,442,608 with Loyola University, one of the defendants in their malpractice action. Thereafter, on April 12, 1993, the plaintiffs filed a motion in their malpractice action seeking an adjudication of Travis' attorney's lien. While that motion was pending and unresolved, the plaintiffs' malpractice action against the remaining defendant was tried to verdict and judgments were entered in favor of Rose Marie Anderson for $2,904,000 and Frank Anderson for $200,000.

On April 12, 1993, the court approved attorney fees of $533,762.74 on the plaintiffs' settlement with Loyola, and on April 22, 1993, required Chessick to hold that sum in a client fund account pending resolution of Travis' fee claims.

On May 11, 1993, Travis moved the court to consolidate her actions in case 92 CH 5917 with the plaintiffs' malpractice action. That motion was denied on June 22, 1993.

On July 20, 1993, Travis filed a four-count second-amended complaint in case No. 92 CH 5917 seeking relief against Chessick only. Count I set forth a cause of action for breach of contract and in the alternative sought relief under a *quantum meruit* theory, count II sought to recover for tortious interference with contract and prospective advantage, count III sought an adjudication of Travis' attorney's lien, and count IV was an action for breach of fiduciary duty.

On August 25, 1993, the trial court entered an order in case No.

86 L 12564 denying the plaintiffs' petition to adjudicate Travis' attorney's lien but ordered that her statement of professional services stand as a petition for *quantum meruit* recovery, consolidated her *quantum meruit* claim in case No. 92 CH 5917 with case 86 L 12564, ordered Chessick to respond to her statement of professional services, and continued the matter for hearing.

On January 13, 1994, after a hearing at which only Travis testified, the trial court awarded Travis $66,000 in attorney fees on a *quantum meruit* theory and an additional $22,000 as an enhancement for a total of $88,000 to be paid by Chessick from the attorney fees awarded as a result of the plaintiffs' settlement with Loyola. It is from this order that the plaintiffs appeal under our docket No. 1—94—0623.

On April 8, 1994, in response to Chessick's motion pursuant to sections 2—615 and 2—619 of the Code (735 ILCS 5/2—615, 2—619 (West 1992)), the trial court dismissed all of Travis' remaining claims in case No. 92 CH 5917. This order is the subject of Travis' appeal under our docket No. 1—94—1557.

In our review of the $88,000 judgment entered in favor of Travis on January 13, 1994, we consider: (1) whether the trial court abused its discretion in consolidating Travis' *quantum meruit* claim with the plaintiffs' malpractice action; (2) whether the court abused its discretion in awarding $66,000 for attorney fees on a *quantum meruit* theory; and (3) the propriety of awarding Travis a $22,000 fee enhancement.

■ Section 2—1006 of the Code provides that "actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." (735 ILCS 5/2—1006 (West 1992).) The decision of whether to consolidate actions pending in the same court is a matter committed to the discretion of the trial court. (*La Salle National Bank v. Helry Corp.* (1985), 136 Ill. App. 3d 897, 483 N.E.2d 958.) The plaintiffs have failed to identify any prejudice to which they were exposed by reason of the consolidation. Additionally, the trial court was required to pass on fee issues in the plaintiffs' malpractice action by reason of Chessick's own petition for an award of fees in excess of the statutory limit in section 2—1114 of the Code and the plaintiffs' petition to adjudicate Travis' lien rights. Consequently, we find no abuse of discretion in the consolidation as a matter of convenience and judicial economy.

Relying primarily upon *American Home Insurance Co. v. Golomb* (1992), 239 Ill. App. 3d 37, 606 N.E.2d 793, the plaintiffs argue: (1) that contingent fee agreements in medical malpractice actions which provide for fees in excess of the limitations set forth in section

2—1114 of the Code, such as the ones executed by them and Travis, are unenforceable as being against public policy; and (2) that attorneys who enter into contingent fee agreements providing for compensation at a rate in excess of the statutory limit contained in section 2—1114 are barred from *quantum meruit* recovery. We disagree with both propositions as applied to the facts in this case.

■ Unlike contingent fee agreements in criminal cases and actions for dissolution of marriage (see 107 Ill. 2d R. 2—106(c)(4)), contingent fee agreements in medical malpractice actions are not *per se* prohibited by statute or the Code of Professional Responsibility. Section 2—1114 only limits the contingent fees that attorneys may recover in medical malpractice actions absent court approval of additional compensation. However, merely because a contingent fee agreement provides for compensation in excess of the maximum percentage that an attorney may receive without court approval does not necessarily render the agreement wholly unenforceable. See *Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987), 116 Ill. 2d 157, 506 N.E.2d 1279.

We decline to adopt a rule holding that every violation of section 2—1114 of the Code, no matter how innocent or unintentional, renders a contingent fee agreement wholly unenforceable. Even the *Golomb* court accepted for analysis purposes the argument that enforcement of a contingent fee agreement is not prohibited where there is only a minor technical violation of section 2—1114. The holding in *Golomb* rests upon the finding that the fee agreement in issue was illegal by reason of the attorney's intentional and deceptive behavior in attempting to charge a fee in excess of the statutory cap. (*Golomb*, 239 Ill. App. 3d at 43-44.) We believe that the question of whether a violation of section 2—1114 is sufficiently egregious to render the contract wholly unenforceable must be decided in the context of the particular facts surrounding the execution of the offending agreement on a case-by-case basis.

■ At this juncture of our analysis, however, we are not faced with a question involving the enforcement of the contingent fee agreements entered into between Travis and the plaintiffs in 1986. As was their right with or without cause (*In re Estate of Callahan* (1991), 144 Ill. 2d 32, 578 N.E.2d 985), the plaintiffs terminated Travis' services on February 19, 1992. Upon her discharge, Travis' contingent fee agreements with the plaintiffs ceased to exist and her only right to compensation, if any, was in *quantum meruit*. (*Callahan*, 144 Ill. 2d at 40.) Hence, we need only address the effect of Travis' having contracted for contingent fees in excess of the statutory cap upon her right to recover *quantum meruit* fees after being discharged.

In holding that "[t]he trial court acted well within its discretion in denying any attorney fees," the *Golomb* court clearly viewed the question of fee forfeiture by reason of an intentional violation of section 2—1114 as a matter committed to the discretion of the trial court. (*Golomb*, 239 Ill. App. 3d at 44.) Even in circumstances where an attorney breaches the fiduciary duty owed to a client, the question of whether the breach is so egregious as to warrant a forfeiture of compensation is a matter committed to sound judicial discretion. (See *In re Marriage of Pagano* (1992), 154 Ill. 2d 174, 607 N.E.2d 1242.) Consequently, we decline to adopt the absolute rule proposed by the plaintiffs and instead hold that the question of whether a discharged attorney who contracted for a contingent fee in excess of the rate set forth in section 2—1114 may recover in *quantum meruit* is a matter committed to the discretion of the trial court.

■ In this case, Travis claims that she innocently entered into 40% contingent fee agreements with the plaintiffs, unaware of the provisions of section 2—1114 which became effective on August 15, 1985. While we are not overly impressed with a plea of ignorance of the law as an excuse for an attorney's actions, we find nothing in this record to suggest that Travis engaged in the type of deceptive conduct present in *Golomb*.

As in any appeal from a discretionary ruling, our function on review is not to determine if the trial court wisely exercised its discretion, but only to determine if that discretion was abused. (*Schoon v. Hill* (1990), 207 Ill. App. 3d 601, 566 N.E.2d 718.) While we readily acknowledge that reasonable judges presented with the circumstances in this case might well have denied Travis a recovery in *quantum meruit*, we are unable to conclude based upon the record before us that permitting such a recovery constituted an abuse of discretion.

The plaintiffs also contest the $66,000 in *quantum meruit* fees awarded to Travis. They argue that she did not present sufficient evidence to support her claim to the number of hours spent in their representation, the reasonableness or necessity of the time spent, the benefit derived by them as a consequence of her services, or her entitlement to the hourly rate claimed.

When an attorney claims fees based on *quantum meruit* and the right to recovery is established, the court should literally award the attorney as much as she deserves. (*Kannewurf v. Johns* (1994), 260 Ill. App. 3d 66, 632 N.E.2d 711.) The attorney bears the burden of proof in establishing the value of her services. (*Callahan*, 144 Ill. 2d at 43. ) In matters relating to an award of attorney fees, the trial court is vested with broad discretionary powers and its decision will

not be reversed on appeal absent an abuse of that discretion. (*Callahan*, 144 Ill. 2d at 44.) In determining the reasonable value of an attorney's services, the court should consider the services performed, the time expended thereon, the attorney's hourly rate, the skill and standing of the attorney, the nature of the case, the difficulty of the issues involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, and the benefit resulting to the client. *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424.

Travis filed a document titled "Statement As To Professional Services Rendered by Joan Schiller Travis In This Case" describing the work that she performed in prosecuting the plaintiffs' action and estimating the amount of time required for each task. Her statement claimed that she spent a total of 384.5 hours representing the plaintiffs. The plaintiffs filed affidavits in opposition to Travis' statement and estimated that Travis spent less than 30 hours communicating with both of them. Additionally, Chessick filed an affidavit stating that Travis did not work on the plaintiffs' case for one year prior to her discharge. At the evidentiary hearing, Travis testified that she was licensed as an attorney in 1981. She testified to the work that she performed as detailed in her statement of services and admitted that she did not keep time logs, but estimated the time spent from memory and a review of her file. She explained that her hourly rate of $150 to $175 in 1986 increased to $200 per hour in 1989 or 1990.

After the hearing, the trial court found that Travis had worked 384.5 hours on the plaintiffs' case from 1986 to 1992 and, although the court found that her hourly rate of $200 was reasonable, Travis was awarded $66,000, the full amount of her *quantum meruit* request, which computes to $171.65 per hour.

The fact that Travis did not maintain contemporaneous detailed time records in a personal injury action does not preclude her right to recovery. (*Johns v. Klecan* (1990), 198 Ill. App. 3d 1013, 556 N.E.2d 689.) We find that she presented sufficient evidence from which the trial court could determine a reasonable fee for her services (see *Callahan*, 144 Ill. 2d at 43-45), especially in light of the fact that the trial judge was not limited to the evidence presented in arriving at a reasonable fee, but could apply his own knowledge in arriving at the reasonable value of Travis' professional services (*Golstein v. Handley* (1945), 390 Ill. 118, 60 N.E.2d 851; *Johns*, 198 Ill. App. 3d at 1022). In that regard, we note the subject fees were awarded by a judge who was not only familiar with the plaintiffs' action, but who as a practitioner was an experienced and well-regarded tort litigator. With the exception of fees awarded for 10 hours of time expended by

Travis discussing her fee arrangements and discharge with Chessick, the plaintiffs, and her own attorney, we find no abuse of discretion in the trial court's determination of the reasonable value of Travis' services.

Our assessment of the propriety of enhancing Travis' fee by $22,000 is another matter. A fee enhancement or lodestar is an upward adjustment to a court-awarded fee intended to compensate an attorney for the risks assumed in representing a party in a factually complex matter where the probability of success is less than certain. (See *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019.) To justify a fee enhancement, the risks assumed by the attorney must be greater than those normally assumed in contingent fee matters and the benefits derived by the client as a result of the efforts of the attorney must be greater than could normally have been expected under the circumstances. While normally associated with class representation, fee enhancements are not limited to class actions. (See *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 408 N.E.2d 248.) The determination of whether a fee enhancement is warranted is discretionary with the trial court and must be analyzed on a case-by-case basis. (*Fiorito*, 72 Ill. 2d 73, 377 N.E.2d 1019.) If, upon evaluating the relevant factors for consideration, "the trial court finds that an increased award is warranted under the circumstances, it should identify those factors which warrant the increase, state the value of the multiplier being used, and give a brief statement of the reasons therefor." *Fiorito*, 72 Ill. 2d at 92.

The only factors identified by the trial court in justification of the fee enhancement awarded to Travis were that: (1) $66,000 in *quantum meruit* fees was not a fair proportion of the fees recovered and likely to be recovered as a consequence of the plaintiffs' malpractice action; and (2) but for Travis' recognition of the plaintiffs' right of action and her having secured the services of Chessick, the plaintiffs would not have derived the benefit that they ultimately did. We simply do not believe that these factors are the types of circumstances which justify a fee enhancement. The relationship of the amount of fees to which Travis is entitled under *quantum meruit* and the fees that were in fact generated by reason of the plaintiffs' action is irrelevant because the reasonable value of her services could not be measured by the results obtained by Chessick. (*Callahan*, 144 Ill. 2d 32, 578 N.E.2d 985.) Further, recognizing a potentially viable cause of action and securing the services of another attorney possessing particular expertise in the legal area involved are hardly the extraordinary services that justify a fee enhancement. There is nothing in this record to suggest that in undertaking the plaintiffs' representation Travis

assumed risks not normally associated with personal injury actions or that the plaintiffs' right to recovery was remote. In sum, we are unable to identify the existence of any relevant factors for consideration which justify an enhancement of the fees awarded to Travis in this matter.

As a consequence of the foregoing, we reverse the circuit court's $22,000 enhancement of the fees awarded to Travis, affirm its finding of her entitlement to a recovery in *quantum meruit*, reduce the amount to which she is entitled under *quantum meruit* by $1,716.50 representing the 10 hours of legal services that did not inure to the benefit of the plaintiffs, and affirm the judgment entered on January 13, 1994, as modified, in the total sum of $64,283.50.

■ Before addressing the substantive issues involved in our review of the order of April 8, 1994, which dismissed Travis' second-amended complaint in case No. 92 CH 5917, we will briefly comment on the nature of the motion that resulted in the entry of that order. Chessick's motion purports to have been brought pursuant to both sections 2—615 and 2—619 of the Code. (735 ILCS 5/2—615, 2—619 (West 1992).) The motion raises issues on the question of whether Travis' second-amended complaint sets forth causes of action upon which relief could be granted and relies upon facts not found in the complaint under attack in an effort to both establish a bar to Travis' right to the remedies sought and contradict factual allegations made by Travis in her complaint. Based upon the theories argued in the motion and its supporting memorandum, it is clear that Chessick not only presented an impermissible hybrid motion commingling theories of relief under sections 2—615 and 2—619 (see *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360), but also commingled arguments going to the truth of the allegations contained in Travis' complaint which could only have been properly raised by a motion for summary judgment brought pursuant to section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1992); see *Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 502 N.E.2d 1096). Although not always fatal, the type of motion practice that occurred in this action should not be countenanced. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605; *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 433 N.E.2d 1350; see 735 ILCS 5/2—619.1 (West 1994).) However, because the trial court gave specific reasons for the dismissal of each count of the complaint, we will address the propriety of the dismissal to the extent that we are able without prejudicing the rights of either party.

Count I of Travis' second-amended complaint sought recovery

against Chessick for breach of the oral fee-sharing agreement they entered into in April 1986. Chessick argues that the agreement was unenforceable as a matter of law. We agree and affirm the dismissal of count I.

■ At the time that Travis and Chessick entered into their oral fee-sharing agreement, Rule 2—107(a) of the Code of Professional Responsibility prohibited an attorney from dividing a fee for legal services with another attorney who was not her partner or associate, unless, among other requirements, the client consented in writing to the employment of the other attorney. (107 Ill. 2d R. 2—107(a).) Travis made no claim that such a writing was ever executed by the plaintiffs in this case, and as a consequence, the fee-sharing agreement with Chessick which formed the basis of her claim in count I was unenforceable without regard to the enforceability of her underlying contingent fee agreement with the plaintiffs. (*Holstein v. Grossman* (1993), 246 Ill. App. 3d 719, 616 N.E.2d 1224; see also *Kaplan v. Pavalon & Gifford* (7th Cir. 1993), 12 F.3d 87.) Additionally, when Travis was discharged as the plaintiffs' attorney prior to any settlement of their malpractice action, she also lost all rights to claim fees based upon any fee-sharing agreement with Chessick. *Hofreiter v. Leigh* (1984), 124 Ill. App. 3d 1052, 465 N.E.2d 110.

Because of its relationship to count I, we next address the propriety of the dismissal of count IV of Travis' second-amended complaint alleging breach of fiduciary duty. Travis relies heavily upon the decision in *Holstein* to support her argument that count IV stated a good and sufficient cause of action. We believe that her reliance on *Holstein* is misplaced under the circumstances of this case.

Unlike the facts in *Holstein*, Travis never alleged that Chessick undertook to obtain the plaintiffs' written consent to their fee-sharing agreement, nor was her claim in count IV based upon any such failure. Travis' claim against Chessick for breach of fiduciary duty was premised solely upon her allegation that he induced the plaintiffs to discharge her as their attorney. Further, a close reading of *Holstein*, particularly the supplemental opinion issued upon the denial of the defendant's petition for rehearing (246 Ill. App. 3d at 741-45), makes it quite clear that the court limited its finding of a triable action for breach of fiduciary duty to the plaintiff's allegations of a joint venture relating to the defendant's representation of the single client with whom the plaintiff had no attorney/client relationship and to whom the plaintiff himself owed no duty to disclose the fee-sharing arrangement. Without relying upon the legal principle articulated by the *Holstein* court on this issue, suffice it to say that we find the factual circumstances present in that case readily distinguishable from the facts present in this action.

Because Travis maintained an attorney/client relationship with the plaintiffs at the time she entered into the joint venture with Chessick for their representation, we hold that absent the plaintiffs' written consent to her engagement of Chessick and her division of fees with him, the joint venture agreement was itself in violation of Rule 2—107(a), rendering it unenforceable. Consequently, for the same reasons given in affirming the dismissal of count I, we affirm the dismissal of count IV of Travis' second-amended complaint.

In count III of her second-amended complaint, Travis sought an adjudication of her attorney's lien. Although the trial court dismissed this count after finding that her claimed lien was invalid, Travis has made no argument in her brief on appeal relating to the propriety of the dismissal of count III. Accordingly, we find that the issue has been waived for the purposes of this appeal. (*Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 495 N.E.2d 1132.) But even if the issue were not waived, we would still affirm the dismissal of count III. Travis did not allege in her complaint that the lien was timely served. Chessick submitted unrebutted evidence that Travis served her notice of lien 13 days after she was discharged as the plaintiffs' attorney. A notice of a lien for fees served by an attorney after being discharged by her client is invalid. *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969.

Lastly, we address the dismissal of count II, Travis' action for interference with contract or prospective advantage premised upon Chessick's alleged inducement of the plaintiffs to discharge her as their attorney. As noted earlier in our opinion, Chessick not only presented a hybrid sections 2—615 and 2—619 motion, he also presented evidentiary material going to the truth of the allegations contained in Travis' second-amended complaint. However, a motion pursuant to either section 2—615 or 2—619 concedes the truth of all well-pled allegations in the complaint under attack. (See *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478; *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256.) Additionally, a section 2—615 motion may not be supported by any evidentiary material (*Mutual Tobacco Co. v. Halpin* (1953), 414 Ill. 226, 111 N.E.2d 155), and evidentiary material in support of a section 2—619 motion may not be submitted for the purpose of contradicting well-alleged facts in the plaintiff's complaint (*Longust*, 151 Ill. App. 3d 754, 501 N.E.2d 1096). Had Chessick wished to contest Travis' allegations that he induced the plaintiffs to discharge her or that she performed her legal services in a competent manner, he should have filed a motion for summary judgment. He did not, and we must ac-

cept as true all of the factual allegations in Travis' complaint in determining the propriety of its dismissal. Consequently, we will not consider any of Chessick's arguments in support of the dismissal of count II based upon the contentions that he did not induce the plaintiffs to discharge Travis as their attorney or that any inducement on his part was privileged by reason of the caliber of legal services that Travis was rendering to the plaintiffs. We will only address the issue of whether count II of Travis' second-amended complaint sets forth facts sufficient to state a cause of action upon which relief could be granted.

The fact that the relationship between an attorney and her client is terminable at will does not of itself defeat an action for tortious interference because the action is not dependent upon an enforceable contract, but rather upon an existing relationship. (*La Rocco v. Bakwin* (1982), 108 Ill. App. 3d 723, 439 N.E.2d 537.) Until terminated, the relationship created by a contract terminable at will is subsisting and will presumptively continue in effect so long as the parties are satisfied. (*Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 435 N.E.2d 827.) Such a relationship is sufficient to support an action for tortious interference. *Kemper*, 106 Ill. App. 3d 121, 435 N.E.2d 827.

An action for tortious interference with a contract terminable at will is classified as one for intentional interference with prospective economic advantage. (See *Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 510, 568 N.E.2d 870.) To prevail in such an action, a plaintiff must plead and prove: "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer*, 142 Ill. 2d at 511.

In count II of her second-amended complaint, Travis alleged that she had an attorney/client relationship with the plaintiffs from which she expected to earn substantial legal fees, that Chessick was aware of that relationship, that Chessick induced the plaintiffs to discharge her as their attorney, and that the plaintiffs in fact discharged her at Chessick's urging. We have previously found that the underlying contract between Travis and the plaintiffs was not *per se* unenforceable. Taking all of the allegations of fact contained in count II of Travis' second-amended complaint as true and drawing all reasonable inferences from those facts which are favorable to her (*Your Style Publications, Inc. v. Mid Town Bank & Trust Co.* (1986), 150 Ill. App. 3d 421, 501 N.E.2d 805), we believe that Travis has stated a cause of action against Chessick for tortious interference with prospective eco-

nomic advantage. (See *La Rocco*, 108 Ill. App. 3d 723, 439 N.E.2d 537.) The truth of Travis' allegations or her ability to prove those allegations is not a matter which we are called upon to address in the context of our review of an order of dismissal predicated upon the motion filed by Chessick in this action. Consequently, we reverse the dismissal of count II of Travis' second-amended complaint.

No. 1—94—0623, Affirmed in part as modified; reversed in part.

No. 1—94—1557, Affirmed in part; reversed in part and remanded.

CAHILL and S. O'BRIEN, JJ., concur.