925 So.2d 431 (2006)
Loreen I. KREIZINGER, P.A., a Florida Professional Association, Appellant,
v.
Sheldon J. SCHLESINGER, P.A., a Florida Professional Association, and Scott Schlesinger, individually, Appellees.
No. 4D04-2919.
District Court of Appeal of Florida, Fourth District.
April 5, 2006.
Rehearing Denied May 8, 2006.
*432 Loreen I. Kreizinger and Justine S. Anagnos of Loreen I. Kreizinger, P.A., Fort Lauderdale, for appellant.
Sheldon J. Schlesinger and John J. Uustal of Sheldon J. Schlesinger, P.A., Fort Lauderdale, Edna L. Caruso and Diran V. Seropian of Edna L. Caruso, P.A., West Palm Beach, for appellees.
WARNER, J.
A lawyer, Loreen Kreizinger, appeals the dismissal of her complaint alleging tortious interference by appellee law firm with Kreizinger's contract with her client. Specifically, she claims that the purchase of a plane ticket for the client to meet with the new lawyer at his office before the client terminated the contract with Kreizinger amounted to tortious interference. Because the complaint alleged that the client contacted appellee law firm first, we conclude that it fails to state a cause of action for tortious interference. We affirm the dismissal of the complaint.
The complaint alleges that Patricia Gates engaged Loreen Kreizinger to represent her and her daughter in a medical malpractice action. After five years of Kreizinger's representation, and on the eve of docket call for the trial of the case, Gates contacted Scott Schlesinger and the Sheldon J. Schlesinger, P.A., law firm. Gates made Schlesinger aware of Kreizinger's representation of her, the pending lawsuit, and the impending trial date. The next day Schlesinger arranged and paid for Gates to fly to Fort Lauderdale from her home in Pensacola, Florida, for the purposes of discussing representation. On that date, Gates terminated the employment of Kreizinger and entered into a contract with Sheldon J. Schlesinger, P.A. to represent Gates and her daughter in the medical malpractice case. The case settled about two months later for a substantial sum.
Kreizinger filed suit against the Schlesinger law firm and Scott Schlesinger alleging tortious interference with her contract with Gates. The defendants moved to dismiss the complaint arguing that because the attorney-client relationship is an "at will" contract, there could be no tortious interference with the contract. The trial court granted the motion, finding no intentional and unjustified interference with the attorney-client relationship by the attorney. Kreizinger appeals and argues that Schlesinger's purchase of the plane ticket constituted an act of intentional and unjustified interference.
The standard of review of orders granting motions to dismiss with prejudice is de novo. MEBA Med. & Benefits Plan v. Lago, 867 So.2d 1184, 1186 (Fla. 4th DCA 2004). "In order to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." Id. A court may not go *433 beyond the four corners of the complaint and must accept the facts alleged therein as true. Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 494 (Fla. 4th DCA 2001).
A party seeking redress pursuant to a claim for tortious interference with a business relationship must show: 1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; 2) knowledge of the relationship on the part of the defendant; 3) an intentional and unjustified interference with the relationship; and 4) damage to the plaintiff as a result of the tortious interference with the relationship. ISS Cleaning Servs. Group, Inc. v. Cosby, 745 So.2d 460, 462 (Fla. 4th DCA 1999). In this case, the trial court found that the complaint failed to allege any ultimate facts constituting the third element of the cause of action, namely the intentional and unjustified interference with the business relationship.
Kreizinger's complaint alleges that Gates, her client, contacted Schlesinger. Therefore, it was Gates that sought out Schlesinger. Schlesinger then arranged to fly Gates and her daughter to his office in Fort Lauderdale, paying for their tickets. On the same day that she came to Fort Lauderdale, Gates discharged Kreizinger and entered into a contract with Schlesinger for representation in the pending malpractice lawsuit.
The lawyer-client relationship is an "at will" contract because a client has a right to discharge a lawyer at any time, with or without cause. See Fla. R. of Prof'l Conduct 4-1.16, Comment on Discharge; U.S. Sav. Bank v. Pittman, 80 Fla. 423, 86 So. 567 (1920).
Where a client initiates contact with a new lawyer which results in the discharge of the first lawyer and hiring of the new lawyer, no intentional and unjustified interference is present. See Potts v. Mitchell, 410 F.Supp. 1278 (D.C.N.C.1976); Gilbert v. Jones, 187 Ga.App. 303, 370 S.E.2d 155 (1988) (affirming entry of summary judgment where evidence established that attorney hired to replace another attorney did not tortiously interfere with former attorney's relationship with client, where client had become dissatisfied with first attorney and actively sought substitute counsel). Even if there are allegations of violation of rules of professional conduct, a violation of the rules does not necessarily create liability between the parties. See, e.g., Brown v. Larkin & Shea, P.A., 522 So.2d 500 (Fla. 1st DCA 1988). The conduct of the lawyer in meeting with the client in this case does not amount to interference because the client came to the new lawyer; the lawyer did not solicit the client.
For this same reason, the payment for Gates' travel to Fort Lauderdale does not create an unjustified interference with Kreizinger's contract, even if it may be an ethical violation, a point we do not decide. Gates had already contacted Schlesinger regarding representation. Had Schlesinger flown to Pensacola to meet with Gates, no "wrong" would have occurred. Paying for the plane ticket is not an intentional and unjustified interference. No allegation is made that payment for the plane ticket was conditioned on Gates signing a contract of representation, nor is it alleged that other inducements were offered, such as staying at an expensive hotel. We have discovered no similar case, and without more, we conclude that the allegations of the complaint did not state a cause of action for tortious interference.
Kreizinger relies heavily on Anderson v. Anchor Organization for Health Maintenance, 274 Ill.App.3d 1001, 211 Ill.Dec. 213, 654 N.E.2d 675 (1995), in support of the argument that the complaint stated a cause of action for tortious interference. In Anderson, the trial court dismissed a *434 count of an attorney's complaint alleging tortious interference with prospective economic advantage where the attorney's co-counsel allegedly induced the plaintiffs in a medical malpractice case to discharge her as their attorney. Id. at 1012, 211 Ill.Dec. 213, 654 N.E.2d 675. The appellate court reversed dismissal of the tortious interference count, noting that the plaintiff alleged that she had an attorney-client relationship with the clients from which she expected to earn substantial legal fees, that the defendant was aware of that relationship, that the defendant induced the clients to discharge her as their attorney, and that the clients in fact discharged her at defendant's urging. Id. at 1013, 211 Ill.Dec. 213, 654 N.E.2d 675. The court concluded that these allegations were sufficient to state a cause of action. However, it appears that a claim for tortious interference under Illinois law requires a pleading of "purposeful" interference, not "intentional and unjustified" interference. Thus, the allegations of the complaint in Anderson would not be sufficient under the Florida rule of tortious interference.
For the foregoing reasons, we affirm the order of dismissal of the trial court.
MAY, J., and SWEET, GARY L., Associate Judge, concur.