2023 IL App (1st) 221806-U

SECOND DIVISION
September 12, 2023

No. 1-22-1806

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| F. NED DIKMEN, as Beneficiary of Trust No. 30613, and CHICAGO TITLE LAND TRUST CO., as Successor Trustee of Trust No. 30613, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEOPLES GAS LIGHT AND COKE COMPANY, | ) | No. 2017 L 10518 |
| | ) | |
| Defendants. | ) | |
| | ) | |
| (Kelly & Karras, Ltd., | ) | |
| | ) | Honorable Thomas More Donnelly, |
| Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse the trial court's order denying petitioner's petition for attorney fees and remand this matter for further proceedings. The trial court erred when it made a finding that petitioner-attorney failed to show good cause for withdrawing from representation without conducting an evidentiary hearing on the issue.

¶ 2    This appeal is taken from the denial of a petition for attorney fees. Third-party petitioner

Kelly & Karras, Ltd., attorneys, represented respondent F. Ned Dikmen in a breach of contract

case against Peoples Gas Light and Coke Company. The parties agreed the attorneys were to receive a contingent fee based on the client's recovery in the case. Following some disagreements between the client and the attorneys, the attorneys moved to withdraw from the representation. The client later settled the underlying case for an undisclosed amount. The attorneys filed a petition for attorney fees, seeking recovery for the services the attorneys performed for the client in the case. The trial court denied any fees to the attorneys, and without conducting an evidentiary hearing, made a finding that they failed to demonstrate good cause for withdrawing from representation and, further, that they failed to meet their burden of proving the fees owed because they did not attach their billing records to the fee petition. For the reasons that follow, we reverse, and we remand for further proceedings.

¶ 3                                BACKGROUND

¶ 4      Respondent F. Ned Dikmen, as the beneficiary of Trust No. 30613, hired petitioner Kelly & Karras, Ltd. to represent him in a dispute with defendant Peoples Gas Light and Coke Company. Dikmen's lawsuit against Peoples Gas sought damages for Peoples Gas's alleged breach of a settlement agreement the parties reached previously. The settlement obligated Peoples Gas to perform remediation of certain environmental contamination of real property owned by the trust whose interests Dikmen was representing. The settlement further required Peoples Gas to provide a "No Further Remediation" letter from the Illinois Environmental Protection Agency. The complaint in the lawsuit for breach of the settlement agreement was filed by attorneys from the Scandaglia & Ryan law firm.

¶ 5      After Peoples Gas answered the complaint, Scandaglia & Ryan withdrew as Dikmen's counsel. Petitioner Kelly & Karras was retained by Dikmen, and it took over as counsel for Dikmen in the suit. Kelly & Karras agreed to take the case on a contingent fee basis, even though

the firm's normal practice was to only take personal injury cases on a contingent basis. Generally, when the firm took commercial disputes such as this case, it would bill the cases on an hourly basis and receive its fee in that way. The parties executed a contingent fee agreement which provided that Kelly & Karras would receive 33 1/3% of the money recovered by Dikmen in the suit against Peoples Gas. Kelly & Karras was granted leave of court to file its appearance on March 29, 2018.

¶ 6       Kelly & Karras represented Dikmen in the litigation for two years. The firm represented Dikmen during at least 10 court appearances, conducted significant discovery, including issuing subpoenas and taking depositions, and it prepared and filed a motion for partial summary judgment on behalf of Dikmen. Kelly & Karras also defended against a cross-motion for summary judgment filed by Peoples Gas. The trial court denied Peoples Gas's cross-motion for summary judgment. However, Kelly & Karras prevailed on the summary judgment motion they filed on behalf of Dikmen, and Dikmen was granted summary judgment on the issue of liability. The only remaining issue in the case being the prove-up on the amount of damages.

¶ 7       After partial summary judgment was granted in Dikmen's favor, the relationship between Dikmen and Kelly & Karras started to become strained, with the main points of disagreement being the manner of conducting the damages hearing and preparing an appropriate settlement offer. Dikmen and his attorneys disagreed about which expert witnesses should be used to prove damages. They disagreed both about the type of expert witnesses that were needed and the identity of the witnesses to be used. Dikmen and his attorneys also disagreed about the amount to offer as a settlement demand. While Kelly & Karras was working to prepare a settlement demand, Dikmen retained two other outside attorneys to review any demand letter that Kelly & Karras prepared.

¶ 8     Kelly & Karras believed that the relationship had reached a point where there was a significant enough breakdown in the attorney-client relationship that it needed to withdraw as Dikmen's counsel. Kelly & Karras filed and perfected an attorney's lien, and it filed a motion to withdraw as Dikmen's counsel. Dikmen did not object to the attorney's lien and did not object to Kelly & Karras's motion to withdraw. The trial court granted Kelly & Karras leave to withdraw as Dikmen's counsel on January 27, 2020.

¶ 9     Later, Kelly & Karras learned that Dikmen settled the case against Peoples Gas. On July 29, 2022, Kelly & Karras filed a motion to adjudicate its attorney's lien, and it sought an award of attorney fees for its representation of Dikmen. Dikmen responded to the fee petition and argued that Kelly & Karras was not entitled to fees because it withdrew from the representation without having good cause for doing so. Dikmen further argued that Kelly & Karras was not entitled to fees because its withdrawal from representation left him in a precarious position in the case, which could have caused him to lose his chance at settlement or being awarded damages. Kelly & Karras filed a reply, and the trial court heard arguments on the attorney-fee matter at a hearing on November 3, 2022.

¶ 10    The trial court entertained the parties' oral arguments on the petition for attorney fees, after which the trial court held that Kelly & Karras was not entitled to fees. The trial court explained that Kelly & Karras had failed to show that there was a complete breakdown of the attorney-client relationship, therefore they were not entitled to attorney fees. The court also held that if Kelly & Karras was entitled to *quantum meruit* recovery, it would deny fees because Kelly & Karras failed to provide its billing records along with its fee petition. The fee petition was denied, and the trial court entered an order extinguishing Kelly & Karras's attorney's lien. Kelly & Karras now appeals.

¶ 11                                    ANALYSIS

¶ 12     On appeal, petitioner Kelly & Karras argues that the trial court erred when it ruled that the firm was not entitled to fees for its representation of Dikmen. The parties agree that our review in this case is under the abuse of discretion standard. See *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 405 (2007) ("The decision whether to award attorney fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion."). An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008).

¶ 13     Kelly & Karras contends that it is entitled to fees on a *quantum meruit* basis even though it withdrew from representing Dikmen because it withdrew only after there was a breakdown in the attorney-client relationship. Kelly & Karras argues the attorney-client relationship broke down over disagreements about how to proceed with the prove-up hearing on damages and determining an appropriate settlement offer. Kelly & Karras argues, therefore, it withdrew with good cause. Kelly & Karras further argues that although it agreed to represent Dikmen on a contingent fee basis, because it withdrew with good cause, it is entitled to recover fees on a *quantum meruit* basis. The trial court ruled against Kelly & Karras for two principal reasons. First, the trial court found that Kelly & Karras had failed to demonstrate a complete breakdown of the attorney-client relationship such that the firm had good cause for withdrawing. Second, the trial court found that Kelly & Karras was required to submit its billing records along with its fee petition in order to obtain an award of fees under *quantum meruit* but failed to do so. We will address these arguments in turn.

¶ 14     Disagreements on Negotiating Settlement of the Damages Claim May Constitute Good
                                  Cause for Withdrawing

¶ 15     The trial court found that Kelly & Karras failed to demonstrate a complete breakdown in the attorney-client relationship. Therefore, their withdrawal was without good cause and meant that the attorneys were not entitled to any fees (citing *McGill v. Garza*, 378 Ill. App. 3d 73 (2007)). Dikmen argues that the trial court correctly concluded that Kelly & Karras failed to meet its burden to show that its withdrawal was for good cause.

¶ 16     The threshold question we will address is whether a disagreement over how to conduct a prove-up hearing on damages, and what sum to offer in settlement can constitute good cause for withdrawal by the attorney from a contingent fee case.

¶ 17     In *McGill*, we analyzed previous cases in which we had found an attorney was entitled to *quantum meruit* recovery even though the attorney had withdrawn from representation. *McGill v. Garza*, 378 Ill. App. 3d 73 (2007). We set forth four situations where we had previously found "good cause" for an attorney withdrawing. *Id*. Two of the circumstances outlined in *McGill* are the two bases on which Kelly & Karras claims it had good cause to support withdrawing in this case: a breakdown of the attorney-client relationship and a client refusing to accept or refusing to negotiate a settlement offer as the attorney thinks to be best. *Id*. (citing *Leoris & Cohen, P.C. v. McNiece*, 226 Ill. App. 3d 591, 597 (1992) (a complete breakdown in the attorney-client relationship, if proven, is a justifiable basis for allowing an attorney to withdraw from a contingent fee case and still receive his fees on a *quantum meruit* basis)). In *Kannewurf*, we also held that an attorney who withdrew from a contingent fee case is entitled to recover on a *quantum meruit* basis if the withdrawal was for a disagreement over settlement negotiations. *Kannewurf v. Johns,* 260 Ill. App. 3d 66, 72-73 (1994) ("Thus, we are called upon to decide what appears to be an issue of first impression in Illinois, whether an attorney is entitled to reasonable compensation for legal services prior to his withdrawal from a contingent fee case, if his sole

reason for withdrawing is because his clients do not want to negotiate a case in the manner he thinks best. We conclude under Illinois law an attorney is entitled to reasonable compensation under these circumstances."). We conclude that, under Illinois law, if an attorney in a contingent fee case withdraws because the client refuses to reasonably negotiate a settlement or there is a breakdown in the attorney-client relationship, that attorney is able to recover the value of the services on a *quantum meruit* basis.

¶ 18    Dikmen argues that Kelly & Karras cannot use their disagreements about the settlement strategies as a basis for having good cause to withdraw because the retention agreement the parties executed gave Dikmen "complete approval" over any settlement. Dikmen also argues that Kelly & Karras's statements about the parties' disagreements are conclusory and lack evidentiary foundation. Lastly, Dikmen argues that there was "noting inherently injurious that the [t]rial [c]ourt should have implied from [Kelly & Karras's] allegation that [Dikmen] hired outside counsel to review [Kelly and Karras's] settlement advice."

¶ 19    Dikmen's first point, that the language of the retention agreement prohibits the attorneys from raising their disagreements about the settlement as a basis for withdrawing, is unavailing. A client always retains the ultimate decision about whether to settle his case. See Ill. R. Prof. Conduct 1.2(a) (the ultimate authority to determine the purposes to be served by legal representation, such as whether to settle a civil matter, must be made by the client). The decision of whether to settle a civil matter is one of the most fundamental and important rights reserved to the client. *Knisley v. City of Jacksonville,* 147 Ill. App. 3d 116, 120-21 (1986). The Rules of Professional Conduct require attorneys to abide by the client's decision about whether to settle a case. Ill. R. Prof. Conduct 1.2(a) (West 2020). Nonetheless, despite the client's authority in this regard, whether derived from the retention agreement, common law rules, or the Rules of

Professional Conduct, we have held that attorneys are entitled to compensation after withdrawing even if the sole reason for the attorney withdrawing is because the clients do not want to negotiate a settlement in a case in the manner the attorney thinks best. *Kannewurf*, 260 Ill. App. 3d at 73.

¶ 20    In *Kannewurf*, we explained that there was sufficient evidence in that case for the trial court to reasonably determine that the plaintiffs' decision to refuse to allow the attorney to negotiate towards a possible settlement, at a time when his professional judgment was that a settlement was not only possible but in plaintiffs' best interests, forced a complete breakdown in the attorney-client relationship similar to that discussed in both the *Leoris & Cohen* case and the *Reed Yates Farms* case. *Id*. We therefore held that the attorney "had justifiable cause for resigning from the case and, therefore, was entitled to the reasonable value of his services up to the date of withdrawal." *Id*.

¶ 21    The client in *Kennewurf* raised the same argument that Dikmen raises here: "that all decisions regarding settlement of a case are to be made exclusively by the client, and therefore, since [the attorney] withdrew because plaintiffs would not allow him to negotiate a settlement of the case, [the attorney] was not justified in withdrawing and, consequently, is not entitled to any compensation for his work." *Id*. at 72. We flatly rejected that argument. *Id.* at 72-73. The provision in the settlement agreement here giving Dikmen "complete approval" over any settlement has little bearing on whether Kelly & Karras had good cause for withdrawing as counsel. Our reading of Illinois cases clearly establishes that the disagreement between Dikmen and Kelly & Karras about whether to settle or the amount of a proposed settlement can constitute good cause for the firm to withdraw and recover the value of the services provided on a *quantum meruit* basis.

¶ 22     The Trial Court Erred When It Summarily Held Kelly & Karras Failed to Prove a
Breakdown in the Attorney-Client Relationship Without
Conducting an Evidentiary Hearing.

¶ 23     We next address the trial court's finding that Kelly & Karras failed to show that there was a complete breakdown of the attorney-client relationship such that the firm had good cause to withdraw from representation. We note at the outset that the judge who heard and ruled upon the attorney fee petition was not the same judge who was presiding at the time Kelly & Karras withdrew as Dikmen's counsel and did not witness the law firm's participation in this case before the damages hearing. In its motion to withdraw, Kelly & Karras stated that "various conflicts and differences of opinion" made it "impossible for the [a]ttorneys to continue to represent [Dikmen] in this matter." The trial court granted the motion to withdraw. Dikmen did not at any time object to the motion to withdraw nor did he ever raise any issue about the representation with the court. A different judge, who did not preside over the underlying case and who was assigned to hear the prove-up of the damages determined after oral arguments, without benefit of counteraffidavits or contrary evidence having been submitted on the question, found that good cause for the withdrawal was not shown.

¶ 24     The issue of whether there was complete breakdown in the attorney-client relationship is a factual question. See *Leoris & Cohen, P.C.*, 226 Ill. App. 3d at 597 (whether the attorney-client relationship had in fact suffered a complete breakdown or whether the plaintiff had demanded payment of fees and such fees were not paid within a reasonable time were unresolved questions of fact precluding summary disposition). Kelly & Karras stated in its fee petition that it had emails and other specific evidence supporting the conclusion that there was a breakdown in the attorney-client relationship, but the firm expressed that it did not want to attach such evidence to its fee petition out of a concern for attorney-client confidentiality. However, Kelly & Karras

provided affidavits from its attorneys, which went completely unrebutted, detailing the breakdown of the relationship.

¶ 25 In his affidavit, William Kelly, one of the principal attorneys to work on Dikmen's case, averred that Dikmen "commenced a series of actions which [Kelly] believed were detrimental to [Kelly & Karras's] continued representation of [Dikmen] in the lawsuit." Kelly went on to detail "significant disagreements" about choosing expert witnesses for the case, their differences of opinion about the amount to offer for settlement, and Dikmen's retention of two different outside attorneys to review Kelly & Karras's work in the case, evidencing Dikmen's lack of trust in Kelly & Karras. Kelly averred that he could testify to and provide further specific evidence of the relationship breakdown if the court would hold an evidentiary hearing, but that he was withholding the information at the time of making his affidavit to protect attorney-client privilege. Kelly concluded that "irreconcilable differences developed between [himself] and Plaintiff Dikmen" and because of "Dikmen's actions and the breakdown of the attorney-client relationship [Kelly & Karras] had no choice but to withdraw."

¶ 26 In response to the petition for fees filed by Kelly & Karras, Dikmen filed legal arguments but no counter-affidavits or evidence. Kelly & Karras responded to Dikmen's arguments by attaching additional evidence to its reply in support of the fee petition. In its reply, Kelly & Karras provided communications between attorneys at the firm and Dikmen in which Dikmen contested the attorneys' assessment of the settlement value of the case, questioned the attorneys' actions with regard to selecting expert witnesses, and detailed the faltering trust and confidence between the parties. For example, both parties sent each other emails evidencing a deterioration of their relationship. Kelly & Karras sent an email to Dikmen stating that it had become clear that Dikmen did "not have the same level of trust in [Kelly & Karras] as when we started this

case." Kelly & Karras further asserted that it had concerns about whether the attorney and client could continue to work together on this case, asking for a commitment from Dikmen that he would listen to the attorneys' advice, and the firm expressed a concern that the "current relationship [was] clouding [Dikmen's] judgment on the legal analysis provided by [Kelly & Karras]." On the other side, Dikmen urged his attorneys in an email to "please be patient and let us see things eye to eye before we ourselves end up in court suing one another." In another email, Dikmen indicated that he and the attorneys had a "miserable relationship."

¶ 27    In *Leoris & Cohen*, this court reversed a summary judgment ruling in favor of the former client in a fee dispute, finding that there was a question of fact about whether good cause for the attorney's withdrawal existed. *Leoris & Cohen*, 226 Ill. App. 3d at 597. Here, the trial court lacked an adequate basis for concluding, as a matter of law, that Kelly & Karras did not have good cause for withdrawing from its representation of Dikmen. As we stated in *Leoris & Cohen*, "[w]e must, therefore, reverse the order granting summary judgment in favor of the [clients] and remand for a determination of whether the [attorney's] withdrawal from its representation of the defendants was justified. If the court finds that the [attorney] justifiably withdrew from the case, then the [attorney] will be allowed to proceed on its claim for fees on a *quantum meruit* basis." *Id*.

¶ 28    At a minimum, Kelly & Karras submitted sufficient evidence to entitle it to an evidentiary hearing on the question of whether it had good cause for withdrawing due to a breakdown in the attorney-client relationship. The trial court reviewed the fee petition and the affidavits and evidence submitted by Kelly & Karras. Dikmen presented no contrary evidence. We find the trial court abused its discretion by disregarding the unrebutted evidence of a

11

breakdown in the attorney-client relationship and finding, without an evidentiary hearing, that Kelly & Karras lacked good cause to withdraw.

¶ 29    Dikmen's argument that Kelly & Karras's statements about the differences in approach to the settlement are conclusory and lack foundation, is likewise unavailing. Kelly & Karras provided detailed evidence in the form of William Kelly's affidavit and email correspondence between the attorneys and Dikmen showing that Dikmen did not want to negotiate a settlement in the way Kelly & Karras thought to be best. Dikmen never objected to the affidavits or other evidence provided in support of the fee petition as being conclusory or without sufficient foundation. Regardless, Kelly & Karras submitted specific evidence that the attorneys and the client had "significant differences of opinion as to the amount [Dikmen] should demand for settlement of [Dikmen's] claims."

¶ 30    For example, in one of the emails Dikmen sent to Attorney William Kelly regarding the settlement, Dikmen expressed that the settlement proposal needed to be an amount Peoples Gas would take very seriously, an amount higher than Kelly & Karras was suggesting. Dikmen continued, the "amount asked in your earlier demand letter was totally out of line. It was nothing less than a **total loser** for me coming home empty handed." (Emphasis in original). Kelly & Karras likewise asserted that, if the trial court held an evidentiary hearing, it could supply further evidence of discord between the parties regarding negotiating a settlement. Kelly & Karras was not provided with the ultimate settlement terms Dikmen accepted after they withdrew, and Kelly & Karras did not want to reveal Dikmen's settlement position from during the time it was representing him in its fee petition because the information is privileged. Kelly & Karras provided sufficient evidence, like the attorney in *Kennewurf*, to at least establish an entitlement to an evidentiary hearing on whether the attorneys' withdrawal was for good cause.

¶ 31    Dikmen also argues his hiring of other attorneys to review Kelly & Karras's work does not imply a complete breakdown of the relationship. While it is true that there might be an innocent explanation for Dikmen's decision to hire additional attorneys, he did not provide any evidence about his reasons for doing so. The only evidence before the trial court on this point was the evidence supplied by Kelly & Karras which viewed Dikmen's decision to hire additional attorneys as emblematic of the breakdown in trust between the attorney and the client. So while Dikmen is free to argue that his decision to hire additional attorneys was simply to be a conscientious litigant, Kelly & Karras is likewise free to argue that Dikmen's actions evidence a breakdown of the relationship. In the face of conflicting allegations, an evidentiary hearing is required to resolve the dispute.

¶ 32    Finally, the trial court found it would not award fees to Kelly & Karras even if fees were allowable under *quantum meruit* because the firm failed to attach detailed billing records to its fee petition to substantiate the *quantum meruit* claim. Kelly & Karras, however, provided affidavits from each attorney who worked on the case, with each affidavit detailing the general services performed for the client, the number of hours worked, and the attorney's customary hourly rate. Moreover, Kelly & Karras provided its full, detailed billing records to opposing counsel before the hearing and brought the detailed billing records to the hearing. Kelly & Karras offered to tender the billing records to the trial court at the hearing, but the trial court did not accept the records and instead found that Kelly & Karras was not entitled to any recovery because the billing records were not attached to the fee petition. Kelly & Karras had already explained that it did not attach the records to the fee petition to protect Dikmen's confidentiality, but it was prepared to submit the billing records at any time.

¶ 33     Under the applicable precedent, Kelly & Karras submitted sufficient information to the trial court from which it could have determined a reasonable fee. An attorney who withdraws for good cause is entitled to fees on a *quantum meruit* basis for services rendered up to the date of withdrawal. *Reed Yates Farms, Inc. v. Yates*, 172 Ill. App. 3d 519, 533 (1988). "Where the attorney's fees are based upon the theory of *quantum meruit* rather than an express contract, the court is literally to award the attorney "as much as he deserves." *Kannewurf*, 260 Ill. App. 3d at 74 (quoting *Lee v. Ingalls Memorial Hospital*, 232 Ill. App. 3d 475, 478 (1992)). "In making this determination, the trial court should assess all the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the clients. *Id*. Here, the trial court was presented with evidence on all these points.

¶ 34     In *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1008 (1995), we found that an attorney's failure to maintain detailed time records did not preclude her right to recovery asserted under *quantum meruit* pursuant to a contingent fee agreement; rather, the records the attorney presented were sufficient evidence for the trial court to determine a reasonable fee for services rendered. *Id*. Thus, even the failure to keep detailed time records would not automatically preclude Kelly & Karras from recovering *some* fees. Here, the records that were submitted, namely the affidavits and all the other information about the underlying case, were sufficient for a court to determine a reasonable fee. See *id.*

¶ 35     Kelly & Karras relies on *Johns v. Klecan*, 198 Ill. App. 3d 1013 (1990) for the proposition that "[s]ince the time and labor required are but one factor in the *quantum meruit* equation, we do not believe that the failure to account for the time spent on a case in

14

exacting detail should, alone, preclude any recovery of fees." *Id.* at 1019. "In summary, we hold that an attorney working on a contingency basis in a personal injury case is not required to present evidence as detailed as that required in *Kaiser* to establish his right to a reasonable fee under *quantum meruit* in case of discharge. Where he presents sufficient evidence of the time and labor which he spent on his former client's case, that evidence must be considered along with all the other relevant factors in deciding upon his entitlement to any fees for services rendered." *Id.*

¶ 36     Dikmen argues that time records or bills were required to be attached to the fee petition for the attorneys to attain any recovery. He takes issue with Kelly & Karras's reliance on *Johns*. Dikmen contends that *Johns* arguably only applies to personal injury cases. We disagree. The *Johns* court did not limit its applicability to personal injury cases. Indeed, in distinguishing a case, it strongly indicated it applied to contingent fee cases generally and its applicability was not limited to personal injury cases: "This case, like *Kaiser*, ultimately involves the calculation of reasonable attorney fees. That similarity notwithstanding, we find *Kaiser* so inapposite to this case as to be inapplicable here. As we have earlier indicated, *Kaiser* is inapposite because it did not involve either a contingent fee arrangement or a request for a *quantum* meruit recovery of fees in a contingent fee setting." We find *Johns* applicable because this case involves both a contingent fee agreement and *quantum meruit* fees in a contingent fee setting.

¶ 37     Dikmen also argues that "the *Johns* court did not hold that an attorney could recover in *quantum meruit* without submitting *any* time records (emphasis in original)." Dikmen contends that while the *Johns* court did not require exacting time records, it still requires the attorney to specify the time and services performed by the attorney for an award to be made. Dikmen maintains that contrary to Kelly & Karras's argument, "Illinois law holds that 'time records [are]

necessary' to a *quantum meruit* award." (Quoting *Tobias v. King*, 84 Ill. App. 3d 998, 1002 (1980)).

¶ 38    We reject Dikmen's arguments on these points. As stated above, the records submitted in this case, namely the affidavits and the other information about the underlying case, were sufficient for a court to determine a reasonable fee. See *Will v. Northwestern University*, 378 Ill. App. 3d 280, 302-03 (2007). The time and labor required in a case is just one of the multiple factors the trial court must consider in determining reasonable attorney fees under the doctrine of *quantum meruit*. *Id.* at 302. The evidence Kelly & Karras submitted with its fee petition would have enabled the trial court to assess the attorneys' skill and standing, the nature of the cause and novelty and difficulty of the subject matter, the attorneys' degree of responsibility, the usual and customary charge in the community, and the benefits resulting to Dikmen. The attorneys each even averred as to the individual work performed and the hours spent working on the case. Additionally, Kelly & Karras provided the billing records to opposing counsel before the hearing on the fee petition and offered to tender the billing records to the court at the hearing. As the billing records exist and are readily available, on remand, Kelly & Karras can provide the billing records to support its *quantum meruit* claim. Its failure to attach them to the fee petition at the outset of the matter, with the aim of protecting their former client's right to confidentiality, is not fatal to the fee petition such that Kelly & Karras cannot recover any fees for its two years of work on this case.

¶ 39    Dikmen argues that Kelly and Karras's appeal is moot because the firm did not obtain a stay of the trial court's order extinguishing the lien pursuant to Illinois Supreme Court Rule 305(k). Supreme Court Rule 305(k) specifies the consequences in certain cases if a party fails to seek a stay of judgment pending appeal.

"(k) Failure to Obtain Stay; Effect on Interests in Property. If a stay is not perfected within the time for filing the notice of appeal, or within any extension of time granted under subparagraph (c) of this rule, the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed; nor shall the reversal or modification affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to a sale based on the judgment and before the judgment is stayed. ***" Ill. S. Ct. R. 305(k) (West 2020).

¶ 40     Rule 305(k) applies to judgments involving right to title or interests in real estate and personal property. It does not apply to money judgments or the money settlement at issue in this case. See *Jackson v. Polar-Mohr*, 115 Ill. App. 3d 571, 576 (1983). The reversal of the judgment in this case affects the rights of the parties to this case and to this appeal and Illinois Supreme Court Rule 305(k) is not implicated. *Smith v. Goldsick*, 110 Ill. App. 3d 431, 434 (1982).

¶ 41     Dikmen points out that the settlement was paid out to him during the time that the lien was extinguished, so Kelly & Karras can no longer enforce any lien rights and the appeal is moot. Dikmen argues that the settlement was paid to him individually but that Dikmen himself was not a party in this case nor was he Kelly & Karras's client. Rather, in this case, "he was acting in his capacity as beneficiary of  *** the land trust." As such, Dikmen argues, because the settlement payment was made to a non-party without any stay of the Trial Court's order, [Kelly & Karras's] appeal is moot. (citing *Smith v. Goldsick*, 110 Ill. App. 3d 431, 434 (1982))."

Dikmen contends that any reversal of the trial court's order would not affect him individually since he is not a party to the litigation (citing Ill. Sup. Ct. R. 305(k)).

¶ 42    Dikmen's argument on this point is predicated on his contention that he is not a party to the litigation. He contends he is only a party to this case in his capacity as beneficiary of the relevant land trust. However, Dikmen cannot claim he is non-party to this litigation where he has acted in his individual capacity rather than his representative capacity. For example, Dikmen's brief on appeal is titled "Plaintiff-Appellee F. Ned Dikmen's Response To The Opening Brief." The appellee attorney's name block concludes with the statement that they are the "Attorneys for Appellee F. Ned Dikmen." Dikmen accepted the settlement in his individual capacity to satisfy the claims he had made in his representative capacity. He cannot now stand behind his role as a mere trust beneficiary to defeat Kelly & Karras's claim.

¶ 43    Inconsistent positions taken by litigants in the same litigation cannot be approved. *Rogers Cartage Co. v. Travelers Indemnity Co.*, 2018 IL App (5th) 160098, ¶ 72; see also *Springfield Marine Bank v. Marbold*, 264 Ill. App. 446, 463 (1932) (one who has actively co-operated with others in a particular manner, will not thereafter be heard to assert an inconsistent right). A representative cannot act on behalf of the principal and for himself at the same time. *ABC Trans Nat. Transp., Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683 (1978). Dikmen cannot use his representative capacity as both a sword and a shield to defeat an arguably valid claim for recompense by his former attorney. See *McDonald v. Neale*, 35 Ill. App. 2d 140, 151 (1962); *Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 135 Ill. App. 3d 477, 484 (1985).

¶ 44    If, on remand, the trial court determines Kelly & Karras is entitled to attorney fees, its decision will have a binding judicial effect, as the circuit court will have jurisdiction over the relevant parties and the subject matter, and it can grant effectual relief. Our decision to reverse

the trial court's order has a practical and tangible legal effect on the controversy and alters the parties' legal rights. The appeal is not moot.

¶ 45                                  CONCLUSION

¶ 46    Based on the foregoing, we reverse, and we remand for further proceedings.

¶ 47    Reversed and remanded.